# In the United States Court of Federal Claims

No. 13-446C
(Filed: December 2, 2015)

| | |
|---|---|
| LINDA G. AUSTIN, *et al.*, | ) Keywords: 38 U.S.C. § 7453; Holiday |
| | ) Pay; 5 U.S.C. § 6103; Executive |
| | ) Order No. 11,582; Observance of |
| *As Individuals and on Behalf of All* | ) Federal Holidays; Summary |
| *Others Similarly Situated,* | ) Judgment; RCFC 56. |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

*Steve Winton*, Winton Law Corporation, San Diego, C.A., for the Plaintiffs.
*Ira M. Lechner*, Washington, D.C., Of-Counsel.

*Joseph Edward Ashman*, Trial Attorney, with whom were *Benjamin C. Mizer*, Principal Deputy, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. *Soquel Harding*, Office of General Counsel, United States Department of Veterans Affairs, Of Counsel.

## OPINION AND ORDER

**Kaplan, Judge.**

The Plaintiffs in this case are or were employed by the Veterans Health Administration (VHA) of the United States Department of Veterans Affairs (VA) as nurses and other health care workers (hereinafter "nurses") who are entitled to receive "additional pay" when they perform "service on a holiday designated by Federal statute or Executive order." 38 U.S.C. § 7453(d); see also id. § 7454. They contend that certain policies governing holiday pay for nurses which are set forth in the VA's Handbook are inconsistent with this statutory entitlement. Plaintiffs further claim that, as a result of the application of those policies, they did not receive payment at holiday rates for all hours for which such rates are mandated by the statute.

The Court certified this matter as a class action on November 20, 2014. See Order, ECF No. 26. It amended the class definition on January 20, 2015, on the parties' joint motion. See Order, ECF No. 32. As amended, the class consists of three categories

of nurses: 1) nurses who worked overtime on a tour of duty any portion of which fell on a
holiday; 2) nurses who worked all or portions of two tours of duty on a holiday; and 3)
nurses who worked a single tour of duty that commenced the day before the holiday and
continued into the holiday. See id.

Plaintiffs allege that the VA maintains the following policies governing additional
pay, each of which they contend is inconsistent with the law: 1) nurses who work a tour
of duty that begins the day before a calendar holiday and that ends on such holiday do not
receive additional pay for any part of that tour of duty; instead, they receive additional
pay only if their tour of duty began on the calendar holiday; 2) nurses who work two
tours of duty that both begin on a calendar holiday receive additional pay for only the
first tour of duty; and 3) nurses do not receive additional pay for overtime work
performed on a holiday.

The case is currently before the Court on the parties' cross-motions for partial
summary judgment. Plaintiffs have moved for summary judgment as to their first and
second claims. The government has moved for summary judgment as to all three claims.

For the reasons set forth below, the Court concludes that the government is
entitled to summary judgment as to Plaintiffs' first claim because the VA's policy of not
affording additional pay for tours of duty that begin the day before but extend into a
calendar holiday is consistent with 5 U.S.C. § 6103 and Executive Order No. 11,582, the
federal statute and executive order that govern the observance of holidays by federal
agencies. On the other hand, Plaintiffs are entitled to partial summary judgment as to
their second claim because the VA lacks any basis in either statute or executive order for
providing additional pay for only the first tour of duty where a nurse works more than
one tour of duty, each of which begins on a holiday. Finally, the Court concludes that the
Plaintiffs have failed to show that there exists a material issue of fact concerning VA's
contention that its policy mandates that nurses receive additional pay for overtime
worked on a holiday. Accordingly, the Court will grant the government's motion for
summary judgment as to Plaintiffs' third claim.

## BACKGROUND

### I.  38 U.S.C. § 7453

Prior to 1991, VA nurses' entitlement to premium pay for work performed on
weekends, holidays, and on an overtime basis was covered by 5 U.S.C. § 5542 and
§ 5546, the statutory provisions that afford such premium pay to federal government
employees generally. In 1991, pursuant to section 401(b)(4) of the Department of
Veterans Affairs Health–Care Personnel Act of 1991, Pub. L. No. 102-40, 105 Stat. 232
(1991), the statutory provision at issue here, 38 U.S.C. § 7453 (entitled "Nurses:
additional pay") became law. This provision created new pay entitlements for VA nurses
for service performed at night (§ 7453(b)), on Saturdays and Sundays (§ 7453(c)), on
designated holidays (§ 7453(d)), and on an overtime basis (§ 7453(e)).

This case involves the interpretation and application of the provision for holiday pay, which states as follows:

> A nurse performing service on a holiday designated by Federal statute or Executive order shall receive for each hour of such service the nurse's hourly rate of basic pay, plus additional pay at a rate equal to such hourly rate of basic pay, for that holiday service, including overtime service. Any service required to be performed by a nurse on such a designated holiday shall be deemed to be a minimum of two hours in duration.

38 U.S.C. § 7453(d).

In 2010, Congress amended the statute. <u>See</u> Caregivers and Veterans Omnibus Health Services Act of 2010, Pub. L. No. 111-163, 124 Stat. 1171. Among other things, the 2010 amendments specified that the additional pay provisions of section 7453 extended to part-time as well as full-time nurses. <u>Id.</u> § 601(k)(1); <u>see also</u> 38 U.S.C. § 7453(a) (stating that "[i]n addition to the rate of basic pay provided for nurses, a full-time nurse or a part-time nurse shall receive additional pay as provided by this section").

## II.  Plaintiffs' Challenges to VA Policies Governing Holiday Pay

As noted above, and described in greater detail below, Plaintiffs claim that the VA's policies governing holiday pay are inconsistent with 38 U.S.C. § 7453(d) in several specific respects. First, VA policy does not provide additional pay to nurses who work a tour of duty that begins the day before a calendar holiday and that ends on such holiday. Second, the VA only provides additional pay for the first tour of duty when nurses work two tours of duty that both begin on a calendar holiday. Finally, according to Plaintiffs, VA policy does not require that nurses receive additional pay for overtime work performed on a holiday.

### A.  <u>Nurses Who Work a Tour of Duty that Begins the Day Before a Holiday and Extends into the Holiday</u>

#### 1.  **Nurses Who Work Portions of Two Tours of Duty on a Calendar Holiday, One of Which Begins the Day Before the Holiday and the Other of Which Begins on the Holiday Itself**

Pursuant to VA policy, full-time nurses who work two tours of duty, one of which begins the day before the holiday and the other of which begins on the holiday itself, receive pay at the premium rates required by the statute only for the second tour of duty. Thus, VA Handbook 5007/43, Part V, Chapter 6, ¶ 1(c)(1) states, in pertinent part, as follows:

> A nurse . . . with a 40-hour basic workweek who performs service on a holiday designated by Federal statute or Executive order shall receive, for non-overtime service, additional pay at a rate equal to the employee's basic

hourly rate of pay . . . . When the basic workweek of a nurse . . . includes portions of 2 tours on a holiday, the tour that commences on the holiday shall be treated as the holiday for pay and leave purposes.

Def.'s Mot. for Partial Summ. J. App. at A1, ECF No. 46 (hereinafter "Def.'s Mot.").

For example, assume that a nurse's basic workweek is Monday through Friday, with each eight-hour tour of duty beginning at 10 P.M. and ending at 6 A.M. the next morning. Assume further that the nurse works one tour of duty that begins at 10 P.M. on Monday, July 3 and ends at 6 A.M. on Tuesday, July 4; and then works another tour of duty that begins at 10 P.M. on Tuesday, July 4 and ends at 6 A.M. on Wednesday, July 5. Under the VA Handbook, the nurse would not receive any additional pay for the first shift, even though she worked six hours on July 4. She would instead receive eight hours of additional pay for the second shift, which would be treated as her "holiday" for purposes of section 7453.

The government contends that this policy is consistent with section 5 of Executive Order No. 11,582, which states that "[a]ny employee whose workday covers portions of two calendar days and who would, except for this section, ordinarily be excused from work scheduled for the hours of any calendar day on which a holiday falls, shall instead be excused from work on his entire workday which commences on any such calendar day." Observance of Holidays by Government Agencies, Exec. Order No. 11,582, 36 Fed. Reg. 2957 (Feb. 11, 1971) (hereinafter "E.O. 11,582"). Plaintiffs respond that the government's reading of section 5 is a "tortured" one and that, even if the government were correct, "vague references in an antiquated Executive Order promulgated during the Nixon administration (20 years before Section 7453(d) became law), which has never been approved by Congress, do not trump clear statutory language to the contrary." Pls.' Mem. of P. & A. at 11, ECF No. 48-1 (hereinafter "Pls.' Mem.").

## 2. Nurses Who Work a Single Tour of Duty that Commences the Day Before a Calendar Holiday and Continues Into the Holiday

Under VA policy, when a nurse works a single tour of duty that begins the day before a calendar holiday but continues into that holiday, the service performed during that tour of duty is not treated as service on a holiday, even if the nurse does not have a regularly scheduled tour of duty that begins on that calendar holiday. Instead, as explained in greater detail below, the nurse will be given an "in lieu of" holiday pursuant to VA Handbook 5011/23, Part II, Chapter 3, ¶ 3. See Def.'s Mot. App. at A19. That "in lieu of" holiday is treated as her holiday for both pay and leave purposes.

Plaintiffs contend that this policy is unlawful and that, under the statute, "a nurse should receive holiday pay for an entire tour of duty that included hours on the calendar holiday regardless of whether the tour began or ended on the holiday." Pls.' Mem. at 5. The government responds that the policy is consistent with E.O. 11,582, which, it contends, requires that only tours of duty that begin on a holiday be treated as holidays

for purposes of laws governing pay and leave, and which provides rules for designating workdays as "in lieu of" holidays in these circumstances.

### B. Nurses Who Work Two Tours of Duty, Both of Which Begin on a Holiday

Under VA policy, when a nurse works two tours of duty that both begin on the same holiday, she receives additional pay only for the first tour. Def.'s Combined Reply, ECF No. 49 (hereinafter "Def.'s Reply") at 13–14. For example, a nurse who works a 12:00 A.M. to 8 A.M. tour on July 4, and then returns for a 6 P.M. to 2 A.M. tour commencing on the same day, will receive additional pay for only the first tour. This policy is not set forth in the VA's Handbook, but it is undisputed that it is, in fact, the policy that the VA follows.

The Plaintiffs argue that this policy is inconsistent with the statute because it withholds additional pay from nurses for service that they perform on a holiday designated by federal statute or executive order. The government responds that, pursuant to the advice set forth in the Comptroller General's civilian pay manual, the VA has the discretion to administratively determine which tour of duty shall be treated as a holiday tour when an employee works two tours of duty, both of which begin on a holiday.

### C. Nurses Who Work Overtime on a Tour of Duty Any Portion of Which Falls on a Holiday

As set forth above, the VA Handbook provides that "[a] nurse . . . with a 40-hour basic workweek who performs service on a holiday designated by Federal statute or Executive order shall receive, for non-overtime service, additional pay at a rate equal to the employee's basic hourly rate of pay." VA Handbook 5007/43, Part V, Chapter 6, ¶ 1(c); Def.'s Mot. App. at A1. Notwithstanding that this Handbook provision appears to provide an entitlement to additional pay only for non-overtime service (thereby implicitly excluding an entitlement to such pay for overtime service on a holiday), the government contends that it is in fact the VA's policy to also provide additional pay to employees who work overtime on a holiday. Def.'s Mot. at 18–19.

As support for its contention, the government cites the declaration of its expert, Thurstan Hunter, who is employed by the VA as a human resources officer (compensation specialist). Id. App. at A31–32. According to Mr. Hunter, "despite the perceived discrepancy of VA Handbook 5007, Part V, Chapter 6, ¶ 1.c(1), in which Title 38 holiday pay is cited as the double rate of pay only for 'non-overtime' service on the holiday, nurses and employees paid on the same basis as nurses do receive double their rate of pay for all overtime hours worked on a holiday." Id. at A31. He further states that "[o]vertime pay on a holiday is currently not described in VA's HR policy," but that overtime pay on a holiday is referenced in the VA timekeeper's manual. See id. at A31; see also id. at A2–A9 (describing how overtime worked on a holiday should be coded on a hard-copy timecard). According to Mr. Hunter, although hard-copy time cards are used only in emergency situations, the manual instructs that timekeepers record overtime

worked on a holiday in a specific column. Id. at A32; see also id. at A5. He states that the VA's Electronic Time and Attendance System uses the same coding and methodology to compute overtime hours worked on a holiday and that when these codes are transmitted to the payroll system, all such hours are compensated at holiday rates. Id. at A32; see also id. at A7, A19 (observing that "[o]vertime on a holiday under 38 U.S.C. § 7453 is referred to and considered 'overtime' but is paid at the same rate as holiday pay, i.e., double an employee's rate of basic pay"). Mr. Hunter further states that the VA is in the process of updating its Handbook to make specific mention of overtime hours worked on a holiday in order to "match VA's current and long-time practice of compensating employees under Title 38 with double their rate of pay for overtime on a holiday." Id. at A32.

## DISCUSSION

### I.  Jurisdiction

The Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2012). The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 215 (1983), but it does not confer any substantive rights, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

In this case, the Plaintiffs assert claims for back pay and other monetary relief based on alleged violations of 38 U.S.C. § 7453. Because section 7453 provides an entitlement to additional pay for service performed on a holiday, it is a "money mandating" statute that supplies an independent source of a substantive right to money damages. Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005). The Court therefore has jurisdiction over this case under the Tucker Act.

### II.  Standard for Summary Judgment

The standards for granting summary judgment are well established. Summary judgment may be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rules of the Court of Federal Claims (RCFC) 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.

The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubts regarding factual issues must be resolved in favor of the party opposing summary judgment. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." Id. at 1391. Further, the court should act with caution in granting summary judgment and may deny summary judgment "where there is reason to believe that the better course would be to proceed to a full trial." Anderson, 477 U.S. at 255.

### III. Resolution of Motions for Partial Summary Judgment

### A.  Holidays Designated by Statute or Executive Order

As discussed, under section 7453(d) of Title 38, a nurse is entitled to additional pay for each hour of work when she "perform[s] service on a holiday designated by Federal statute or Executive order." In this respect, section 7453(d) is identical to 5 U.S.C. § 5546(b), the provision governing holiday pay for civil service employees to which VA nurses were subject prior to 1991. Like section 7453(d), 5 U.S.C. § 5546(b) also requires that employees be paid a twice their rate of basic pay for work performed "on a holiday designated by Federal statute or Executive order."[1]

Under both provisions, the phrase "designated by Federal statute or Executive order" modifies the word "holiday." Thus, under section 7453(d), as under 5 U.S.C. § 5546(b), a nurse who performs service on a "holiday" that has been designated as such by either a statute or an executive order is entitled to additional pay for such service. The Court begins therefore with a survey and brief description of the elaborate set of rules drawn from statute and executive order that govern the designation of holidays in the federal workplace.

The holiday-designating federal statute for government employees is 5 U.S.C. § 6103 (entitled "Holidays"). Although section 6103 is part of Title 5 of the U.S. Code, Plaintiffs do not dispute that it is applicable to VA nurses. Thus, section 6103 is not among the Title 5 provisions from which VA nurses have been exempted. See 38 U.S.C. § 7425(a) (specifying Title 5 provisions to which nurses and other covered health care professionals are not subject). Nor is section 6103 inconsistent with any provision of

---

[1] While 5 U.S.C. § 5546(b) is essentially identical to section 7453(d) in terms of identifying which days shall be considered "holidays" for purposes of affording employees premium pay, section 7453 is more generous in the amount of premium pay it affords nurses. Thus, section 7453 specifies that a nurse will receive additional pay "for each hour of service . . . including overtime service." In contrast, 5 U.S.C. § 5546(b) caps the number of hours for which premium pay is available to eight, and explicitly excludes "overtime work as defined by section 5542(a)" of Title 5.

Chapter 74 of Title 38. <u>See</u> 38 U.S.C. § 7425(b) (stating that "no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with . . . this chapter shall be considered to supersede, override, or otherwise modify such provision of . . . this chapter except to the extent that such provision of title 5 or of such other law specifically provides, by specific reference to a provision of this chapter . . . to be superseded, overridden, or otherwise modified"). To the contrary, Title 38 does not contain its own provision concerning the designation of holidays for pay and leave purposes. Instead, the provision at issue here—38 U.S.C. § 7453(d)—expressly requires repair to another "Federal statute or Executive order" to determine which days will be considered "holidays" for which premium pay is required. Therefore, 5 U.S.C. § 6103 is a holiday-designating statute for purposes of 38 U.S.C. § 7453(d). <u>See</u> <u>James v. Von Zemenszky</u>, 284 F.3d 1310, 1320 (Fed. Cir. 2002) (observing that "it is assumed that, absent other overriding provisions of law, title 5 applies to executive agencies such as DVA").

The primary executive order that establishes the rules for designating holidays for federal government employees is E.O. No. 11,582 (entitled "Observance of Holidays by Federal Agencies"), which was issued in 1971.[2] That Executive Order, which is appended as a note to 5 U.S.C. § 6103, applies, by its own terms, to VA nurses. E.O. 11,582 § 1 (stating that the order applies, with exceptions not relevant here, "to all executive departments, independent agencies, and Government corporations, including their field services").

While Executive Order 11,582 was issued in 1971, it is only the most recent of several similar orders that go back more than a century and which actually preceded the enactment of the holiday designating statute, 5 U.S.C. § 6103, in 1966. Those Orders, like E.O. 11,582 and like 5 U.S.C. § 6103, have done more than designate the calendar holidays on which federal workers will be excused from work. They have also established rules for designating "in lieu of" holidays to address the variety of work schedules and arrangements that exist in the federal workplace, as well as those situations in which calendar holidays fall on Sundays.[3] Further, they determine which workdays shall be considered "holidays" for purposes of premium pay laws like 5 U.S.C. § 5546(b)

---

[2] Other executive orders that involve the designation of holidays for federal government employees include directives for one-time holidays such as those that have provided employees time-off on the day before or after Christmas or New Year's Day. <u>See, e.g.</u>, Closing of Executive Departments and Agencies of the Federal Government on Friday, December 26, 2014, Exec. Order No. 13,682, 79 Fed. Reg. 73459 (Dec. 5, 2014) (hereinafter "E.O. 13,682"); Providing for the Closing of Government Departments and Agencies on January 2, 2007, Exec. Order No. 13,421, 72 Fed. Reg. 425 (Dec. 28, 2006) (hereinafter "E.O. 13,421"). Those orders generally state that the time off shall be treated as falling within the scope of E.O. 11,582 for pay and leave purposes. E.O. 13,682 § 3; E.O. 13,421 § 1.

[3] As discussed in more detail below, Congress has adopted legislation addressing the situation where a calendar holiday falls on a Saturday.

and 38 U.S.C. § 7453(d). <u>See</u> 5 U.S.C. § 6103(b) (rules apply "[f]or the purposes of statutes relating to pay and leave of employees, with respect to a legal public holiday or any other day declared to be a holiday by Federal statute or Executive order); E.O. 11,582 § 6 ("In administering the provisions of law relating to pay and leave of absence, the workdays referred to in sections 3, 4, and 5 shall be treated as holidays in lieu of the corresponding calendar holidays."); 5 C.F.R. § 610.201 (instructing that "[a]gencies determine holidays under section 6103 of title 5 United States Code, and Executive Order 11,582 of February 11, 1971").

The first Executive Order governing the observance of holidays in the federal workplace was No. 1,076, which was issued in 1909 by President Taft. Entitled "Closing Government Offices On Mondays When Certain Holidays Fall On Preceding Sunday," it instructed that federal employees would generally observe a holiday falling on a Sunday by being excused from work the following Monday. Exec. Order No. 1,076 (May 22, 1909).

In 1945, President Truman issued Executive Order 9,636, "Observance by Government Agencies of Holidays Falling on Sundays." Exec. Order No. 9,636, 10 Fed. Reg. 12543 (October 3, 1945). That Order superseded and expanded on E.O. 1,076's treatment of holidays falling on a Sunday, by addressing the designation of so-called "in lieu of" holidays in circumstances in which an employee's basic workweek includes Sunday. <u>Id.</u> § 3.

In 1952, President Truman issued Executive Order 10,358, "Observance of Holidays by Government Agencies," which superseded E.O. 9,636 and expanded upon that Orders' holiday observance instructions. Exec. Order. No. 10,358, 17 Fed. Reg. 5269 (June 11, 1952) (hereinafter "E.O. 10,358"). E.O. 10,358 defined which calendar holidays would be observed, <u>id.</u> § 2(a), and established the "workday," rather than the calendar day, as the operative administrative period for observance of holidays and for pay and leave statutes, <u>id.</u> § 2(b); § 7. Specifically, it defined the "workday" as "those hours which comprise in sequence the employee's regular daily tour of duty within any 24-hour period, whether falling entirely within one calendar day or not." <u>Id.</u> § 2(b).

E.O. 10,358 also addressed for the first time how an employee who has two workdays touching a calendar holiday would observe the holiday, stating as follows:

> Any employee whose workday covers portions of two calendar days and who would, except for this section, ordinarily be excused from work scheduled for the hours of any calendar day on which a holiday falls, shall instead be excused from work on his entire workday which commences on any such calendar day.

<u>Id.</u> § 6. E.O. 10,358 further designated the workday commencing on the holiday as an employee's holiday for pay and leave purposes, stating that: "[i]n administering the provisions of law relating to pay and leave of absence, the workdays referred to in

sections 4, 5, and 6 shall be treated as holidays in lieu of the corresponding calendar holidays." Id. § 7.

Finally, E.O. 10,358 established the rules for designating an in lieu of holiday, where an employee's basic workweek included Sunday, and where a calendar holiday fell on a day that had been administratively designated as the employee's regular weekly non-workday in lieu of Sunday. Id. § 4(b). In such circumstances, the Executive Order provided that the employee would observe the holiday on the next workday of his basic workweek that followed his administratively designated regular weekly non-workday in lieu of Sunday. Id.

Congress made its first comprehensive foray into the subject of holiday designation for the federal workplace when it enacted 5 U.S.C. § 6103 in 1966. See Pub. L. 89-554, 80 Stat. 515 (1966). Section 6103 confirmed the President's authority to designate holidays for observance by the federal workforce. See 5 U.S.C. § 6103(b) (prescribing rules "[f]or the purpose of statutes relating to pay and leave of employees, with respect to a legal public holiday and any other day declared to be a holiday by Federal statute or Executive order"). Section 6103 also identified and codified a number of "legal public holidays." Id. § 6103(a).

Further, while the existing executive orders had dealt with circumstances in which a calendar holiday fell on a Sunday, section 6103 addressed the observance of calendar holidays that fall on a Saturday. It provided that in such circumstances the preceding Friday would be considered a legal public holiday for employees whose basic workweek is Monday through Friday. Id. § 6103(b)(1)(A). In addition, for employees whose basic workweek is something other than Monday through Friday, the statute provides for the recognition of an in lieu of holiday when the calendar holiday falls on the employee's weekly non-workday that is not the employee's non-workday administratively scheduled as an in lieu of Sunday. Id. § 6103(b)(2). In that situation, section 6103 designated that an in lieu of holiday would be observed on the workday that immediately preceded that regular weekly non-workday. Id.

In 1971, President Nixon issued Executive Order 11,582, "Observance of Holidays by Government Agencies." E.O. 11,582. That Order superseded E.O. 10,385 and is the current Executive Order governing the observance of holidays in the federal workplace. It continues to establish the "workday," rather than the calendar day, as the operative administrative period for observance of holidays and for pay and leave statutes. Id. § 6. It also continues to designate the workday commencing on the holiday as an employee's holiday for purposes of pay and leave when the employee has two workdays touching the calendar holiday. Id. § 5 (providing that "[a]ny employee whose workday covers portions of two calendar days and who would, except for this section, ordinarily be excused from work scheduled for the hours of any calendar day on which a holiday falls, shall instead be excused from work on his entire workday which commences on any such calendar day"). Finally, E.O. 11,582 continues to apply the rules set forth in its predecessors concerning the designation of in lieu of holidays for employees whose basic workweek includes Sunday. Id. § 3(b).

**B.  Comparison of VA Policies Defining Service on a Holiday with the Applicable Federal Statute and Executive Order Governing Holiday Designations**

As described above, the determination of whether an employee has performed service on a holiday designated by federal statute or executive order for purposes of 38 U.S.C. § 7453(d) depends upon the application of the holiday-designating rules set forth in 5 U.S.C. § 6103 and E.O. 11,582. To the extent that the VA policies in question provide additional pay to nurses for service performed on days that those rules designate as holidays, those policies comply with section 7453(d). The Court now turns to a comparison of the VA's policies and the rules set forth in the statute and executive order in order to resolve the cross-motions for summary judgment.

**1.  Additional Pay for Tours of Duty that Start the Day Before a Holiday and Extend into the Holiday**

The first issue before the Court on the parties' cross-motions for summary judgment concerns the lawfulness of the VA's policy of not providing nurses with additional pay for work performed on a holiday in circumstances where the tour of duty during which such work was performed began on a non-holiday. Plaintiffs challenge this policy as applied to those class members who worked portions of two tours of duty on a holiday, and as applied to those who worked only a single tour of duty that began the day before the holiday.

**a.  Portions of Two Tours of Duty on a Holiday**

As explained above, E.O. 11,582 establishes the rules for designating when an employee will observe a holiday for pay and leave purposes where the employee works a tour of duty that straddles a calendar holiday and a non-holiday. It provides that "[w]orkday means those hours which comprise in sequence the employee's regular daily tour of duty within any 24-hour period, whether falling entirely within one calendar day or not." E.O. 11,583 § 2(b). It further provides in section 5 that "[a]ny employee whose workday covers portions of two calendar days and who would, except for this section, ordinarily be excused from work scheduled for the hours of any calendar day on which a holiday falls, shall instead be excused from work on his entire workday which commences on any such calendar day." Id. § 5. Further, section 6 of the Executive Order states that "[i]n administering the provisions of law relating to pay and leave of absence, the workdays referred to in sections 3, 4, and 5 shall be treated as holidays in lieu of the corresponding calendar holidays." Id. § 6.

The VA's policy, as stated in the Handbook, is consistent with these provisions of the Executive Order. It provides, in pertinent part, that "[w]hen the basic workweek of a nurse . . . includes portions of 2 tours on a holiday, the tour that commences on the holiday shall be treated as the holiday for pay and leave purposes." VA Handbook 5007/43, Part V, Chapter 6, ¶ 1(c); Def.'s Mot. App. at A1.

Plaintiffs argue that the VA's reading of section 5 of the Executive Order is a "tortured" one. Pls.' Mem. at 8. According to Plaintiffs, the correct reading of section 5, when read in conjunction with section 6, is that the Order requires that "all 'workdays' which cover portions of two calendar days, any one of which is a calendar holiday, are entitled to be treated as holidays for pay and leave purposes." Id.; see also id. at 11 (contending that under E.O. 11,582, "any workday which covers portions of two calendar days, any one of which is a calendar holiday, is entitled to be treated as a holiday for pay and leave purposes"). Under Plaintiffs' reasoning, a nurse who worked one eight-hour shift beginning at 10 P.M. on July 3 and ending at 6 A.M. on July 4 would be entitled to eight hours of holiday pay for that tour of duty and another eight hours of holiday pay for a subsequent tour of duty beginning at 10 P.M. on July 4 and ending at 6 A.M. on July 5.

Plaintiffs' argument is unpersuasive. Section 6 of the Executive Order states that the "workdays referred to in sections 3, 4, and 5 shall be treated as holidays in lieu of the corresponding calendar holidays" for purposes of "administering the provisions of law relating to pay." E.O. 11,582 (emphasis added). Contrary to Plaintiffs' argument, the term "workdays" in section 6 clearly refers to the workdays that have been designated as holidays under those sections. For purposes of section 5, such workdays are those that commence on the calendar holiday. That is the most natural reading of the E.O.'s text. Further, it is the most sensible reading because it results in employees receiving holiday pay only for tours of duty from which they would otherwise be excused. On the other hand, adopting the Plaintiffs' reading would mean that, although nurses were not otherwise excused from a tour of duty that began the day before and extended into the calendar holiday, they would still be entitled to additional pay for working that tour.

In short, VA Handbook 5007/43, Part V, Chapter 6, ¶ 1(c) tracks sections 5 and 6 of the Executive Order. Accordingly, the Court concludes that VA's policy with respect to nurses who worked two tours of duty that straddle the same calendar holiday does not violate the requirements of 38 U.S.C. § 7453(d), which mandates additional pay for service only when it is performed on a holiday designated by federal statute or executive order.

### b.  Single Tour of Duty that Began the Day Before a Holiday

As noted above, under section 5 of E.O. 11,582, "[a]ny employee whose workday covers portions of two calendar days and who would, except for this section, ordinarily be excused from work scheduled for the hours of any calendar day on which a holiday falls, shall instead be excused from work on his entire workday which commences on any such calendar day." Plaintiffs argue that section 5 does not justify the VA's policy of not affording premium pay in situations where a nurse works a tour that begins before but ends on the calendar holiday where a nurse does not have—as section 5 contemplates—a second tour of duty that begins on that calendar holiday. For the reasons set forth below, however, the Court concludes that the VA's policy is consistent with both 5 U.S.C. § 6103 and the Executive Order because it provides that a nurse who works only a single tour of duty in this circumstance will receive an in lieu of holiday. The nurse would be

excused from work for that in lieu of holiday; or, if she did work on that in lieu of holiday, she would be entitled to additional pay for such work.

The VA policy governing the designation of in lieu of holidays is set forth in VA Handbook 5011/23, Part II, Chapter 3, ¶ 3. It provides as follows:

> 1) For employees whose basic workweek is Monday through Friday, holidays falling on a Sunday shall be observed the following Monday; holidays falling on Saturday shall be observed on the preceding Friday; and all other holidays shall be observed on the day they occur.
>
> 2) For employees whose basic workweek is other than Monday through Friday, the employee's first day off in the calendar week is designated as the day off in lieu of Sunday and the employee's second day off in the calendar week is designated as the day off in lieu of Saturday.
>
>> (a) When a holiday falls on the day designated as a day off in lieu of Sunday, the employee's next workday shall be the day observed as the holiday for that employee.
>>
>> (b) When a holiday falls on the day designated as a day off in lieu of Saturday, the employee's preceding workday shall be the day observed as the holiday for that employee.

Def.'s Reply Supp. App. at SA1.

For example, assume that a nurse has a basic workweek of Monday through Friday consisting of five eight-hour shifts that begin at 10 P.M. each night and end at 6 A.M. the following day. In this circumstance, assume that the July 4th holiday occurs on a Saturday. As noted above, VA policy provides that "[f]or employees whose basic workweek is Monday through Friday, holidays falling on a . . . Saturday shall be observed on the preceding Friday." VA Handbook 5011/23, Part II, Chapter 3, ¶ 3(a)(1). In this instance, pursuant to this policy, the Friday night to Saturday morning tour of duty would be designated as the nurse's holiday. The nurse either would be excused from working that tour of duty or would receive holiday pay for work done on that shift.

A more complex example is presented by a nurse who has a basic workweek that consists of five eight-hour shifts that begin at 10 P.M. each night, Thursday through Monday, and end at 6 A.M. the following day. Because this nurse has a basic workweek that is other than Monday through Friday, the VA Handbook provides rules for identifying which of her non-workdays shall be treated as her days off in lieu of Saturday and Sunday. It then designates the workday that will serve as the employee's in lieu of holiday based on whether the calendar holiday falls on the employee's in lieu of Saturday or her in lieu of Sunday.

In the example given, the Handbook designates the nurse's first day off in the calendar week (Tuesday night to Wednesday morning) as her "day off in lieu of Sunday." VA Handbook 5011/23, Part II, Chapter 3, ¶ 3(a)(2). It designates her second day off in the calendar week (Wednesday night through Thursday morning) as her "day off in lieu of Saturday." Id.

Now assume that this nurse works her regular shift that begins at 10 P.M. on Monday night, July 3, and then extends into Tuesday, July 4 at 6 A.M. As described above, the VA does not treat this shift (i.e., this workday) as the employee's holiday. Instead, the VA recognizes that the nurse is entitled to a holiday for the shift that begins on the calendar holiday (i.e., the shift that begins on Tuesday, July 4 and ends on Wednesday, July 5). That shift, however, does not take place on the employee's workday; rather, it has been designated pursuant to the VA Handbook as the nurse's day off in lieu of Sunday. In such circumstances, the Handbook provides that the nurse's "next workday [i.e., Thursday night through Friday morning] shall be the day observed as the holiday for that employee." Id.

Accordingly, the VA's in lieu of holiday policy is consistent with section 3(b) of E.O. 11,582 and with 5 U.S.C. § 6103(b)(2). Section 3(b) of the E.O. addresses the situation where a holiday falls on an employee's in lieu of Sunday. It provides as follows:

> Any employee whose basic workweek includes Sunday and who would ordinarily be excused from work on a holiday falling within his basic workweek shall be excused from work on the next workday of his basic workweek whenever a holiday falls on a day that has been administratively scheduled as his regular weekly nonworkday [sic] in lieu of Sunday.

E.O. 11,582. And 5 U.S.C. § 6103(b)(2) addresses the circumstances where a calendar holiday falls on an employee's in lieu of Saturday or any other non-workday (other than an in lieu of Sunday). It states as follows:

> Instead of a holiday that occurs on a regular weekly non-workday of an employee whose basic workweek is other than Monday through Friday, except the regular weekly non-workday administratively scheduled for the employee instead of Sunday, the workday immediately before that regular weekly nonworkday [sic] is a legal public holiday for the employee.

In short, VA's policies regarding additional pay for nurses who work a single tour of duty that begins the day before a calendar holiday but extends into that holiday are consistent with the holiday-designating rules set forth in the Executive Order and statute. The government, accordingly, is entitled to summary judgment as to this claim.[4]

---

[4] Under VA policy, part-time nurses are entitled to additional pay only if they perform service that begins on a calendar holiday; they do not receive the benefit of so-called "in lieu of" holidays. VA Handbook 5007/43, Part V, Chapter 6, ¶ 2(c); Pls.' Reply at PSA98, ECF No. 52. The government has expressly stated that its motion does not

### 2.   Additional Pay for Nurses Who Work Two Tours of Duty, Both of Which Begin on the Holiday

As noted, the VA's policy is that where a nurse has two tours of duty that commence on a holiday (be it a calendar holiday or a designated in lieu of holiday), she receives additional pay for only the first tour of duty. Thus, if a nurse were to work two tours of duty on July 4, one beginning at 12:00 A.M. and ending at 8 A.M., and the other beginning at 4 P.M. and ending at midnight, she would receive additional holiday pay for only eight hours, even though she worked sixteen hours on the calendar holiday.

This apparently unwritten policy does not comport with the requirement in 38 U.S.C. § 7453(d) that "[a] nurse performing service on a holiday designated by Federal statute or Executive order shall receive for each hour of such service the nurse's hourly rate of basic pay, plus additional pay at a rate equal to such hourly rate of basic pay, for that holiday service, including overtime service." In the example given, the nurse worked sixteen hours on July 4th, which is a calendar holiday designated by 5 U.S.C. § 6103(a) and section 2(a) of E.O. 11,582. Nothing in the statute or in the Executive Order permits an agency to treat any part of the July 4th calendar holiday as something other than a "holiday" for the purposes of pay and leave statutes where an employee works two tours of duty, both of which begin on that calendar holiday.

The government, in fact, does not argue that the VA's policy is based on a holiday-designating statute or executive order. Instead, it cites a passage in the Comptroller General's Civilian Personnel Manual, published in 1991 (hereinafter the "1991 Manual"), which, citing several decisions of the Comptroller General, states as follows:

> The definition of "workday" for holiday purposes in Executive Order No. 11,582 does not contemplate a situation where two of the shifts in an employee's basic workweek commence on a holiday and, therefore, the question of which one of the two shifts is to be considered as falling on a holiday is a matter for administrative regulation and determination.

Def.'s Reply Supp. App. at SA4 (citations omitted).

---

address VA's holiday pay policies and procedures with respect to part-time nurses. Def.'s Mot. at 17 n.3. The Plaintiffs' motion for summary judgment did not contain any specific discussion regarding VA's holiday policies with respect to part-time employees. In their Reply Brief, however, Plaintiffs raised for the first time a claim that the VA's failure to provide part-time nurses additional pay for service performed on the in lieu of holidays established by federal statute and executive order violates section 7453(d). Pls.' Reply at 15–16. Given the fact that the government expressly declined to address VA's policies with respect to part-time nurses in its motion and that the Plaintiffs waited until their Reply Brief to do so, the Court's opinion on the cross-motions for partial summary judgment is limited to VA's holiday pay policies as they apply to full-time nurses.

Decisions of the Comptroller General are not binding on this Court. <u>Foley Co. v. United States</u>, 36 Fed. Cl. 788, 792 n.6 (1996) (citing <u>National Forge Co. v. United States</u>, 779 F.2d 665, 668 (Fed. Cir. 1985)). But more to the point, this passage is of no assistance to the government in this case because 38 U.S.C. § 7453(d) provides for additional pay for hours worked on holidays "designated by Federal statute or Executive Order." As the GAO's Civilian Personnel Law Manual notes, "[t]he definition of 'workday' for holiday purposes in Executive Order 11,582 does not contemplate a situation where two of the shifts in an employee's basic workweek commence on a holiday." Def.'s Reply Supp. App. at SA4. It is thus impermissible under section 7453(d) for the VA itself to designate as "a matter of administrative regulation and determination" which hours of work, all of which were performed on a designated holiday, shall be considered to fall on a holiday.

Further, the government has supplied the Court with only one page of the 1991 Manual. The Court infers from the Manual's citation of the Comptroller General's opinions listed in the text (32 Comp. Gen. 191 (1952), Comp. Gen. B-114643 (Oct. 5, 1953), and 34 Comp. Gen. 502 (1955)) that the excerpt provided by the government refers to the designation of hours of work on a holiday for purposes of the holiday pay statute in Title 5 at section 5546(b). But 5 U.S.C. § 5546(b), unlike 38 U.S.C. § 7453(d), precludes premium payment for holiday work "in excess of eight hours." Therefore, the Manual's advice—that an agency may use its own discretion to decide which of two eight-hour periods shall be considered to fall on a holiday—should be understood only in that context.

In short, the VA's policy of restricting the additional pay due to nurses who perform two tours of duty, both of which begin on a holiday, is inconsistent with 38 U.S.C. § 7453(d). Nurses are entitled to additional pay for all hours worked on a holiday when they perform two tours of duty that both begin on such a holiday. Therefore, the Court will grant Plaintiffs' motion for partial summary judgment as to this claim.

### 3. Overtime Service on Holidays

The VA Handbook provides that "[a] nurse . . . with a 40-hour basic workweek who performs service on a holiday designated by Federal statute or Executive order shall receive, <u>for non-overtime service</u>, additional pay at a rate equal to the employee's basic hourly rate of pay." VA Handbook 5007/43, Part V, Chapter 6, ¶ 1(c) (emphasis supplied); Def.'s Mot. App. at A1. Notwithstanding that this provision in the Handbook appears to provide an entitlement to additional pay only for non-overtime service, the government contends that it is in fact the VA's policy to also provide additional pay to employees who work overtime on a holiday.

Thus, the government presented the declaration of Thurstan Hunter, who stated that the VA's systems for time and attendance and payroll are programmed to ensure that when nurses work overtime on a holiday they receive double their regular rate of pay. Mr. Hunter's declaration attempts to explain what he calls "the perceived discrepancy of VA Handbook 5007, Part V, Chapter 6, ¶ 1.c(1), in which Title 38 holiday pay is cited as

16

the double rate of pay only for 'non-overtime' service on the holiday." Def.'s Mot. App. at A31. He asserts that the reference to holiday pay in VA Handbook 5007/43, Part V, Chapter 6, ¶ 1(c) was in the context of work during an employee's regularly scheduled tour of duty and that "[s]ince overtime is not part of an employee's 'regularly scheduled' tour under Title 38, the term 'non-overtime work' was specifically used to exclude overtime hours." Id. "The policy" he states "does not describe or attempt to describe overtime on a holiday as that is not considered 'holiday pay.'" Id.[5]

The Court frankly finds this elliptical explanation of the current language of the Handbook difficult to understand. Nonetheless, it has no basis for rejecting the interpretation offered by Mr. Hunter, given that his testimony that the VA's systems are programmed to provide double pay to nurses who perform overtime on a holiday is uncontested by the Plaintiffs. Id. at A31–32. Further, Mr. Hunter examined the payroll records of the five named Plaintiffs for the last six years. The results of his examination establish that the VA does, in fact, provide additional pay to nurses who perform overtime work on holidays.[6]

In short, Mr. Hunter's declaration, the timekeeper's manual, and the pay records of the named Plaintiffs demonstrate that—notwithstanding its poorly worded Handbook—the VA's policy is to pay nurses at holiday rates when they work overtime on a holiday. The Plaintiffs' response—that they "were not always correctly paid for overtime service on a holiday" (Pls.' Mem. at 2)—does not raise a material issue of fact

---

[5] The government further explains as follows in its brief:

> The VA excludes overtime service from its holiday policy because "overtime pay" and "holiday pay" are accounted for differently within VA's time and attendance system. Specifically, only those hours worked by a nurse as part of his or her designated holiday tour of duty qualify as "holiday hours" and are recorded and paid by the VA's Enhanced Time and Attendance (ETA) system as "holiday pay." Overtime hours worked by a nurse on a holiday are not considered "holiday hours" because they are in addition to the nurse's designated holiday tour of duty. Overtime hours worked by a nurse are tracked and paid by the ETA system as overtime.

Def.'s Mot. at 5–6 (citations omitted).

[6] For example, Plaintiff James Walsh, Mr. Hunter explained, received the correct amount of holiday pay, including pay for overtime for all records he reviewed. Def.'s Mot. App. at A20–21. Plaintiff Raymond Isadore similarly received the correct amount of holiday pay, including holiday pay for overtime, for all records, except in one instance in which the timekeeper had not properly recorded his hours. Id. at A21–22; see also id. at A19–24 (reviewing payroll records of named Plaintiffs and identifying examples of payment at double rates of pay for overtime worked on holidays).

as to what VA's policy requires. Thus, Plaintiffs point out that Mr. Hunter's review revealed numerous instances in which the named Plaintiffs were not properly compensated for overtime they worked on holidays. But Plaintiffs point to nothing in the record that might suggest that the identified instances of underpayment were a result of any deliberate policy not to provide additional compensation for overtime service, as alleged in the complaint. To the contrary, Mr. Hunter's declaration points out that the instances of underpayment were due to timekeeper or other errors in the application of VA policy.

To be sure, Plaintiffs now suggest that there may be a systemic problem of timekeeper errors across the VA which often results in the failure of the VA to compensate nurses for overtime worked on a holiday. Pls.' Mem. at 18–19. But this contention is not within the parameters of their complaint, which alleges an official and deliberate VA policy and practice of failing to compensate nurses for overtime worked on holidays. See Compl. ¶ 9 ("The overriding legal question in this case is whether the VA violated the holiday pay statutes of Title 38 by its systemic policy and practice at various VHA facilities of failing to include remuneration equal to double-time pay for each and every hour of holiday service by VHA employees who are or were employed in occupations identified in paragraph 7, supra, including 'overtime service.'"); id. ¶ 16 (claiming that "VA Handbooks and other official instructions as to the computation of holiday pay specifically exclude 'overtime service' which is specifically included within the computation of holiday pay by 38 U.S.C. § 7453(d)"). In fact, it was on the basis of Plaintiffs' claim that such a deliberate policy existed that this Court granted their motion for class action certification as to this issue.

Accordingly, the government is entitled to summary judgment as to Plaintiffs' claim that the VA maintains a policy and practice of not providing additional pay for overtime performed on a holiday. To the extent that Plaintiffs or other VA nurses have claims that the VA failed to correctly apply its policy, resulting in underpayments, such claims are outside the purview of this lawsuit.

## CONCLUSION

For the reasons set forth above:

1. The government's motion for partial summary judgment is **GRANTED** and the Plaintiffs' cross-motion is **DENIED** as to Plaintiffs' claim challenging the lawfulness of VA's policy under which nurses do not receive additional pay for tours of duty that begin the day before a calendar holiday and that end on such holiday; the Court concludes that this policy is consistent with 38 U.S.C. § 7543(d);

2. The government's motion for partial summary judgment is **GRANTED** and the Plaintiffs' cross-motion is **DENIED** as to Plaintiffs' claim that in violation of 38 U.S.C. § 7453(d), it is the VA's policy that nurses not

receive pay at holiday rates for overtime work performed on a holiday; and,

3. The Plaintiffs' motion for partial summary judgment is **GRANTED** and the government's cross-motion is **DENIED** as to Plaintiffs' claim that the VA policy that provides that nurses who work two tours of duty that both begin on a calendar holiday will receive additional pay for only the first tour of duty violates 38 U.S.C. § 7453(d); the Court concludes that the statute requires that the VA pay such nurses at holiday rates for all hours worked on the holiday.

The parties shall file a joint status report within 30 days of the date of this Order setting forth a proposal to govern further proceedings in this case.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge