# In the United States Court of Federal Claims

No. 13-446C
(Filed: September 19, 2016)

|  |  |
|---|---|
| LINDA G. AUSTIN, *et al.*, | ) Keywords: 5 U.S.C. § 7453; 5 U.S.C. |
|  | ) § 6103; Holiday Pay; Summary Judgment; |
|  | ) E.O. 11,582; "In Lieu Of" Holiday; Part- |
| Plaintiffs, | ) Time Employees. |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES OF AMERICA, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

*Steve Winton*, Winton Law Corporation, San Diego, CA, for the Plaintiffs. *Ira M. Lechner*, Washington, DC, Of Counsel.

*Joseph Edward Ashman*, Trial Attorney, with whom were *Benjamin C. Mizer*, Principal Deputy, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant. *Soquel Harding*, Office of General Counsel, United States Department of Veterans Affairs, Of Counsel.

**OPINION AND ORDER**

**KAPLAN, Judge.**

This case is currently before the Court on Plaintiffs' motion for reconsideration of the Court's decision in Austin v. United States, 124 Fed. Cl. 410 (2015) (hereinafter "Austin I") and on the parties' second set of cross-motions for partial summary judgment. In Austin I, the Court resolved the parties' first set of cross-motions for partial summary judgment, which concerned the lawfulness of certain holiday pay policies that the Department of Veterans Affairs (VA) applies to its full-time nurses and other health care workers (hereinafter "full-time nurses"). After the Court decided Austin I, the parties filed a second set of cross-motions for partial summary judgment addressing the VA's holiday pay policies with respect to nurses employed on a part-time and intermittent basis (hereinafter "part-time nurses").

For the reasons set forth below, Plaintiffs' motion for reconsideration is **DENIED** and each of the parties' cross-motions for partial summary judgment as to the claims of part-time nurses is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**BACKGROUND**

The background of this case is set forth in detail in the Court's opinion in Austin I. See 124 Fed. Cl. at 412–15. To summarize briefly, by statute, VA nurses (whether employed on a full or part-time basis) are entitled to receive "additional pay" when they perform "service on a holiday designated by Federal statute or Executive order." 38 U.S.C. § 7453(d); see also id. § 7454. In their complaint and in subsequent pleadings, Plaintiffs alleged that the VA's official policies (set forth in its Handbook) are inconsistent with this statutory provision in several respects.

In Austin I, the Court entered summary judgment for the government as to two of Plaintiffs' claims, one of which challenged VA's policy of not providing additional pay to full-time nurses who work a tour of duty that begins the day before a calendar holiday and that ends on such holiday, and a second which objected to what Plaintiffs characterized as an illegal official policy of not providing additional pay to full-time nurses for overtime work performed on a holiday. 124 Fed. Cl. at 419–21; 422–24. On the other hand, the Court entered summary judgment for Plaintiffs as to their challenge to the lawfulness of VA's policy of providing full-time nurses additional pay for only their first tour of duty when they work two tours of duty that both begin on a calendar holiday. Id. at 421–22.

In Austin I the Court limited its judgment to the claims of full-time nurses because the government had expressly stated that its motion did not address holiday pay entitlement for part-time nurses and because Plaintiffs waited until their reply brief to press their claims on behalf of part-time nurses. 124 Fed. Cl. at 421 n.4. Accordingly, after Austin I, the Court issued a Scheduling Order to govern briefing of these remaining issues on summary judgment. ECF No. 63. And after briefing on the second set of cross-motions was completed, Plaintiffs filed a motion for reconsideration of the Court's decision in Austin I regarding the claims of the full-time nurses. ECF No. 68.

Thereafter, the Court directed the government to respond to Plaintiffs' motion for reconsideration. ECF No. 71. It also requested that both parties submit supplemental briefs to clarify whether and to what extent VA's official holiday pay policies for part-time nurses were consistent with the holiday pay policies applicable to full-time nurses that were at issue in Austin I. ECF No. 69. Those briefs have now been filed and all pending motions are ready for disposition.[1]

---

[1] In light of the extensive briefing of the issues before the Court and the fact that oral argument was held on the first set of cross-motions for partial summary judgment, the Court has concluded that oral argument on the pending motions is unnecessary.

# DISCUSSION

**I.     Plaintiffs' Motion for Reconsideration**

Plaintiffs have moved for reconsideration of two aspects of this Court's decision in Austin I. See Pls.' Mot. for Recons. of Order and Op. Re Summ. J. (Pls.' Mot. for Recons.), ECF No. 68. First, they challenge this Court's denial of their motion for partial summary judgment as to the claims of full-time nurses who worked a tour of duty that began the day before a calendar holiday and extended into the holiday, but did not work another tour of duty that began on that calendar holiday. See id. at 9–24. In Austin I, this Court held that VA's policy of not providing full-time nurses additional pay for such single tours of duty was lawful because under Executive Order No. 11,582 (hereinafter "the E.O." or "E.O. 11,582") and 5 U.S.C. § 6103, no part of the workday on which the single tour was performed would be considered a holiday. Instead, another workday would be designated as the employee's "in lieu of" holiday pursuant to the rules set forth in the E.O. and the statute. 124 Fed. Cl. at 420–21. In their motion for reconsideration, Plaintiffs argue that the Court misinterpreted the E.O. when it reached this conclusion.

Second, Plaintiffs request that the Court reconsider its decision to grant summary judgment to the government as to Plaintiffs' claim that the VA has violated the statute by maintaining an official policy of not providing additional pay to full-time nurses for overtime work performed on a holiday. See Pls.' Mot. for Recons. at 24–25. Plaintiffs request reconsideration "on the limited ground that defendant admits the VA had a past practice of 'split tours' which denied full-time nurses holiday premium pay." Pls.' Mot. for Recons. at 24. For the reasons set forth below, Plaintiffs' motion for reconsideration is **DENIED**.

**A.     Plaintiffs' Grounds for Seeking Reconsideration Are Insufficient**

It is well established that "[m]otions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru–Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999)). "Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." Webster v. United States, 92 Fed. Cl. 321, 324 (2010) (quoting Matthews v. United States, 73 Fed. Cl. 524, 526 (2006)). "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

In this case, Plaintiffs have failed to demonstrate that there exist extraordinary circumstances justifying their request that the Court reconsider its opinion in Austin I. They point to no intervening change in controlling law. Nor do they identify evidence that was unavailable when the original cross-motions for partial summary judgment were before the Court. Instead, in their motion, Plaintiffs largely repeat arguments that they made earlier regarding the interpretation of E.O. 11,582 or pose variations on those arguments that they could have presented during the original round of briefing. Because "the movant . . . must do more than 'merely reassert[ ] arguments which were previously made and carefully considered by the court,'" Bannum, Inc. v. United States, 59 Fed. Cl. 241, 243 (2003) (alteration in original) (quoting Henderson Cty. Drainage Dist. No. 3 v. United States, 55 Fed. Cl. 334, 337 (2003)),

3

Plaintiffs have failed to make the extraordinary showing required to warrant this Court's reconsideration of its earlier decision.

### B. In Any Event, Plaintiffs' Arguments Lack Merit

In any event, Plaintiffs' variations on their previous arguments lack merit. Plaintiffs argue that the Court erred when it held that section 5 of E.O. 11,582 is inapplicable when full-time nurses work a single tour of duty that begins the day before and extends into the calendar holiday, but do not work a subsequent tour of duty that begins on the calendar holiday. As described in Austin I, the Court concluded that section 5 of the E.O. is applicable only where the nurse has another workday that commences on the holiday. 124 Fed. Cl. at 419–20. The Court held that in the single tour situation, on the other hand, section 3 of E.O. 11,582 and 5 U.S.C. § 6103(b) are the operative holiday-designating authorities. Id. at 420–21. And, as the Court described in detail, under those authorities, a nurse who worked a single tour that began the day before the calendar holiday (and whose next workday did not begin on the calendar holiday) would observe the calendar holiday on another scheduled workday during her basic workweek. That "in lieu of" holiday would be determined on the basis of the complex rules set forth in the E.O. and the statute, which are also contained in the VA Handbook. Id.

Plaintiffs' first ground for seeking reconsideration—that the Court erred when it did not apply section 5 to single tour situations—is without merit. Section 5 of E.O. 11,582 provides that

> Any employee whose workday covers portions of two calendar days and who would, except for this section, ordinarily be excused from work scheduled for the hours of any calendar day on which a holiday falls, shall instead be excused from work on his entire workday which commences on any such calendar day.

In its decision in Austin I, the Court concluded that section 5 does not apply in a single tour situation because the language of section 5 contemplates that the nurse will begin a second workday on the same calendar holiday on which her first workday ended. Plaintiffs contend that this conclusion is incorrect, arguing that the phrase "entire workday which commences on any such calendar day" encompasses not just the workday that begins on the calendar holiday, but also the workday that begins on the calendar day preceding the calendar holiday. Pls.' Mot. for Recons. at 11–15. Therefore, Plaintiffs argue, full-time nurses who work a single tour should either be excused from work for the tour of duty that began the day before the calendar holiday, or be provided additional pay for working it.

This interpretation of section 5, which Plaintiffs also proffered during the first round of briefing, is unpersuasive. First, the most natural reading of the phrase "any such calendar day" is that it refers to the immediately preceding phrase "any calendar day on which a holiday falls"— i.e., the calendar holiday. Plaintiffs' argument that it instead refers to the "two calendar days" over which an employee's workday falls ignores that the phrase "any such calendar day" is singular, while the phrase "two calendar days" is plural. Moreover, under Plaintiffs' construction of section 5, nurses who are not in the single tour situation—i.e., nurses scheduled to begin a tour of duty on the same calendar holiday on which their previous tour ended—would be excused from work (or, if not excused, would receive additional pay) for both the entire workday that

4

ended on the calendar holiday and the entire workday that began on it. In other words, plaintiffs who work two eight-hour tours of duty, each of which straddles a single calendar holiday, would be granted the benefit of two holidays.

But the Court already rejected this interpretation of section 5 in Austin I, when Plaintiffs offered it in connection with their challenge to VA's pay policy for employees who work two tours of duty that both straddle the same calendar holiday (a challenge it has apparently now abandoned). See Pls.' Mot. for Recons. at 12 n.7 (observing that "[o]n reflection, Plaintiffs agree with the Court's finding that when an employee is scheduled to work a tour from July 3 to July 4 followed by a second tour from July 4 to July 5, the VA within its administrative discretion may select the second tour beginning on the holiday itself as the designated holiday"). As the Court stated there:

> Section 6 of the Executive Order states that the "workdays referred to in sections 3, 4, and 5 shall be treated as holidays in lieu of the corresponding calendar holidays" for purposes of "administering the provisions of law relating to pay." E.O. 11,582 (emphasis added). Contrary to Plaintiffs' argument, the term "workdays" in section 6 clearly refers to the workdays that have been designated as holidays under those sections. For purposes of section 5, such workdays are those that commence on the calendar holiday. That is the most natural reading of the E.O.'s text. Further, it is the most sensible reading because it results in employees receiving holiday pay only for tours of duty from which they would otherwise be excused. On the other hand, adopting the Plaintiffs' reading would mean that, although nurses were not otherwise excused from a tour of duty that began the day before and extended into the calendar holiday, they would still be entitled to additional pay for working that tour.

124 Fed. Cl. at 419–20.

Similarly unpersuasive is Plaintiffs' argument that section 3 of the E.O. (which this Court concluded was the operative holiday-designating provision for purposes of single tour of duty situations) "does not establish rules for when the employee's scheduled 'workday covers portions of two calendar days.'" Pls.' Mot. for Recons. at 14 (emphasis in original); see also id. at 5 (observing that "Plaintiffs believe that section 3(a) applies predominately to the hundreds of thousands of federal employees who work only tours of duty which occur entirely on and within a single 'calendar day'"). Contrary to Plaintiffs' argument, it is clear that section 3 does apply to employees who work tours of duty that straddle two calendar days. Section 3(a) of the E.O., for example, states that an employee "shall be excused from work on the next workday of his basic workweek whenever a holiday falls on Sunday." See also § 3(b) (referring to employee's next "workday"). And the word "workday" is defined in section 2(b) of the E.O. to mean "those hours which comprise in sequence the employee's regular daily tour of duty within any 24 hour period, whether falling entirely within one calendar day or not."

In their motion for reconsideration, Plaintiffs appear to claim that—notwithstanding the VA policy regarding "in lieu of" holidays for nurses in the single tour of duty situation, which is

5

covered by VA Handbook 5011/23, Part II, Chapter 3, ¶ 3 (see Austin I, 124 Fed. Cl. at 420)—some unspecified plaintiffs have worked single tours of duty without being granted an "in lieu of" holiday. Pls.' Mot for Recons. at 23. The government, on the other hand, cites the contrary testimony of its expert, Thurstan Hunter, and notes that the pay records it submitted for at least one of the plaintiffs reflect that the VA does follow the Handbook's policy in single tour situations. Def.'s Resp. to Pls.' Mot. for Recons. at 7–9.

To the extent that Plaintiffs are now claiming that the VA is violating its policy with respect to full-time nurses who work a single tour of duty by not granting them an "in lieu of" holiday, that claim is outside the parameters of this action, which was certified as a class on the basis of Plaintiffs' characterization of their claims in their complaint as involving challenges to official VA pay policies. See Austin I, 124 Fed. Cl. at 423–24 (declining to consider Plaintiffs' new claim that systemic timekeeper errors have resulted in the failure of the VA to compensate nurses for overtime worked on a holiday, because the gravamen of their complaint was based on the existence of "an official and deliberate VA policy and practice of failing to compensate nurses for overtime worked on holidays").

For similar reasons, the Court declines to reconsider its decision to grant summary judgment to the government as to Plaintiffs' claim that the VA has violated the statute by maintaining an official policy—set forth at VA Handbook 5007/43, Part V, Chapter 6, ¶ 1(c)—of not providing additional pay to full-time nurses for overtime work performed on a holiday. In Austin I the Court granted summary judgment to the government on this claim because the undisputed facts showed that VA's official policy when full-time nurses work overtime on a holiday is to provide them with double their regular rate of pay. 124 Fed. Cl. at 422–24. The Court declined to consider Plaintiffs' argument—raised for the first time in their opposition to the government's motion (and based on the statements made by the government's expert)—that notwithstanding the official policy, the VA systemically violated it as a result of timekeeper errors. Id.

Now, Plaintiffs seek reconsideration of the Court's grant of summary judgment as to the overtime claims "on the limited ground that defendant admits the VA had a past practice of 'split' tours which denied nurses holiday premium pay." Pls.' Mot. for Recons. at 24. Specifically, according to Plaintiffs, "[t]he record is crystal clear the VA had a past practice, at least in Memphis, Tennessee, which unlawfully denied nurses holiday premium pay when they worked overtime on late night tours of duty which consecutively covered portions of two calendar days." Id.

The Court declines to grant reconsideration on this basis because the claim that Plaintiffs would have the Court decide—that there was a past practice among timekeepers in Memphis, Tennessee (and perhaps elsewhere) of creating split tours that denied nurses holiday pay for the overtime they worked—is outside the scope of the complaint in this case. Plaintiffs' argument, beginning with the filing of their complaint and continuing up through their motion for class certification and through discovery, was that the VA maintained an official policy of not providing additional pay to nurses who worked overtime on a holiday. See Compl. ¶ 16 (alleging that "VA Handbooks and other official instructions as to the computation of holiday pay specifically exclude 'overtime service' which is specifically included within the computation of

6

holiday pay by 38 U.S.C. § 7453(d)"); Pls.' Mem. in Supp. of Mot. for Class Certification at 1, ECF 20-1 (failure to provide additional pay "was based upon official VA policy, set forth in the VA Handbook, which directly contradicts the holiday pay statute"); Pls.' Reply Mem. in Supp. of Mot. for Class Certification at 2, ECF No. 22 (stating that the failure to provide additional pay to the class was "the product of official VA policy as set forth in VA Handbook 5007/43, Part V, Chapter 6, Section 1(c)(1)").

It was not until their response to the government's motion for partial summary judgment that Plaintiffs shifted gears and argued, on the basis of Mr. Hunter's review of payroll records, that there existed a systemic problem at the VA of timekeeper errors that resulted in the failure to provide additional pay to some of the named plaintiffs and others for overtime they worked on holidays. Pls.' Mem. in Supp. of Pls.' Opp. to Def.'s Mot. for Summ. J. at 18–21, ECF 47-1. In their Motion for Reconsideration, Plaintiffs have further refined this new claim by casting it as a challenge to an alleged past practice of establishing "split tours" to avoid paying nurses additional pay for overtime at one or more VA facilities. Pls.' Mot. for Recons. at 24–26.

Nothing in the Plaintiffs' motion persuades the Court that it should reconsider its grant of summary judgment as to Plaintiffs' overtime claims and allow them to raise a different, entirely new claim at this stage in the litigation, after discovery has been completed and dispositive motions resolved. To be sure, the class definition includes all nurses who "worked overtime on a tour of duty any portion of which fell on the holiday," and who "did not receive 'additional pay' pursuant to 38 U.S.C. § 7453(d), 38 U.S.C. § 7454(a) or 38 U.S.C. § 7454(b)(1) for each and every hour of such service . . . including overtime service." Order, ECF No. 26. But the class definition does not allow the Court to consider every possible ground upon which these class members might claim entitlement to compensation for overtime worked on a holiday; rather, the Court may consider only those grounds Plaintiffs asserted in their complaint and upon which the Court certified the class.

For these reasons, and based on the Court's decision in <u>Austin I</u>, Plaintiffs' motion for reconsideration is **DENIED**.

## II.     Cross-Motions for Partial Summary Judgment as to Claims of Part-Time Nurses

### A.     Holiday Pay Policy for Part-Time Nurses

As described in <u>Austin I</u>, in 2010 Congress extended to part-time nurses the same entitlement to additional pay for work performed on a holiday that was previously enjoyed only by full-time nurses. 124 Fed. Cl at 413 (citing Caregivers and Veterans Omnibus Health Services Act of 2010, Pub. L. No. 111-163, 124 Stat. 1171, § 601(k)(1), and 38 U.S.C. § 7453(a) (stating that "[i]n addition to the rate of basic pay provided for nurses, a full-time nurse or a part-time nurse shall receive additional pay as provided by this section")). Thus, pursuant to 38 U.S.C. § 7453(d), "a [part-time] nurse performing service on a holiday designated by Federal statute or Executive order shall receive for each hour of such service the nurse's hourly rate of basic pay, plus additional pay at a rate equal to such hourly rate of basic pay, for that holiday service, including overtime service."

7

The VA's holiday pay policy for part-time nurses is set forth in VA Handbook 5007/43 Part V, Chapter 6, ¶ (2). It provides that part-time nurses "shall receive additional pay on the same basis as that for a full-time employee, except . . . [a] part-time nurse shall be entitled to holiday pay only for service performed on the actual calendar holiday." Id. Therefore, and pertinent to the claims that are currently before the Court, part-time nurses, unlike full-time nurses, do not receive the benefit of so-called "in lieu of" holidays under VA policy. See Def.'s Suppl. Br. at 2; id. Attach. at 1–2; VA Timekeepers Manual Chapter 1, § 105.07(a)(3)–(4) (ECF No. 59) (noting that provisions of the Timekeepers Manual regarding legal holidays falling on Saturdays, Sundays, or days off in lieu of Saturdays and Sundays are not applicable to part time employees).[2]

At first blush, the language of the Handbook appears to suggest that part-time nurses, unlike their full-time counterparts, will receive additional pay only for the hours worked on the calendar holiday itself, regardless of whether their shift begins or ends on that day. In order to clarify whether that is, in fact, VA's policy, the Court requested that the parties file supplemental briefs addressing how VA's pay policy applies in the following circumstances (which the Court addressed in Austin I with respect to full-time nurses): 1) where a part-time nurse works a single tour of duty that begins the day before the calendar holiday and ends on the calendar holiday; 2) where a part-time nurse works a tour of duty that begins on a calendar holiday but ends the next day; 3) where a part-time nurse works portions of two tours of duty on a calendar holiday, one which begins the day before the calendar holiday and the other which begins on the calendar holiday; and 4) where a part-time nurse works two shifts, both of which begin on the calendar holiday.

Each of these scenarios was addressed by the government in its supplemental brief, with a supporting declaration from the government's expert, Mr. Thurstan Hunter. Plaintiffs state that they do not take issue with the government's statement of its current official policy with respect to part-time nurses. See Pls.' Suppl. Br. at 1.

Thus, it is undisputed that a part-time nurse who works a single tour of duty that begins the day before the calendar holiday and ends on the calendar holiday currently does not receive holiday pay for any part of that workday (including the hours worked on the calendar holiday). According to Mr. Hunter, this result obtains because "the VA has recognized regularly scheduled tours that begin on the actual calendar holiday as the tour eligible for holiday pay entitlement." Def.'s Suppl. Br. Attach. at 1.

Second, it is undisputed that under VA policy a part-time nurse who works a tour of duty that begins on a calendar holiday but ends the next day receives holiday pay for the entire tour of duty (i.e., both for the hours worked on the calendar holiday and the hours worked the next day). Third, as Mr. Hunter explains, where a part-time nurse works portions of two tours of duty on a calendar holiday, one which begins the day before the calendar holiday and the other which begins on the calendar holiday, the tour that begins on the calendar holiday is designated as her

---

[2] In Austin I, the Court incorrectly cited to VA Handbook 5007/43, Part V, Chapter 6, ¶ 2(c) for this premise. See 124 Fed. Cl. at 421 n.4.

8

holiday for purposes of additional pay. Id. at 2. Accordingly, no part of the tour that began the day before the calendar holiday is treated as a holiday for pay or leave purposes.

Finally, Mr. Hunter states that, under VA policy, where a part-time nurse works two tours of duty, both of which begin on the calendar holiday, she receives holiday pay for all hours worked on each tour. Id. He further states that a nurse who was excused from the first tour because it was a holiday will be required to work the second tour (and will receive holiday pay for that second tour). Id.

### B. Standards for Motion for Summary Judgment

As the Court noted in Austin I, summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rules of the Court of Federal Claims (RCFC) 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.

The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubts regarding factual issues must be resolved in favor of the party opposing summary judgment. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." Id. at 1391.

In this case, the material facts are not in dispute. The issues before the Court are purely legal ones. Accordingly, the case is appropriate for disposition by summary judgment.

### C. "In Lieu of" Holidays and Part-Time Nurses Who Work Single Tours

As described above, Plaintiffs' opening brief in support of their initial motion for partial summary judgment did not contain any specific discussion regarding VA's holiday policies with respect to part-time nurses. In their reply brief on the initial motion, Plaintiffs raised for the first time a claim that VA's failure to provide part-time nurses additional pay for service performed on the "in lieu of" holidays established by federal statute and executive order violates section 7453(d). Pls.' Reply to Def.'s Opp'n to Pls.' [First] Mot. for Partial Summ. J. at 15–16, ECF No. 52. As stated above, however, under VA policy, part-time nurses are not afforded "in lieu of" holidays. Accordingly, Plaintiffs have now reframed their argument, contending that VA's failure to provide part-time nurses with "in lieu of" holidays is inconsistent with 5 U.S.C. § 6103 and E.O. 11,582. Pls.' Mem. in Supp. of Second Mot. for Partial Summ. J. (Pls.' Mem.) at 4–11. The Court finds this argument unpersuasive.

As described in detail in Austin I, 5 U.S.C. § 6103 and E.O. 11,582 are the operative holiday-designating authorities for employees of the federal government, including VA nurses. In addition to identifying the calendar holidays that the federal government will observe for pay and leave purposes, 5 U.S.C. § 6103 and E.O. 11,582 also provide rules by which employees enjoy the benefit of "in lieu of" holidays in certain circumstances where a calendar holiday falls

9

on an employee's non-workday. Thus, 5 U.S.C. § 6103(b)(1)(A) states that for "employees whose basic workweek is Monday through Friday," "[i]nstead of a holiday that occurs on a Saturday, the Friday immediately before is a legal public holiday." Id. Section 6103(b)(2), in turn, establishes rules for designating such an "in lieu of" holiday for "an employee whose basic workweek is other than Monday through Friday." Id. § 6103(b)(2); see also Austin I, 124 Fed. Cl. at 420–21 (providing examples).

Similarly, pursuant to section 6 of E.O. 11,582, certain "in lieu of" holidays described in sections 3 and 4 of the E.O. are recognized for pay and leave purposes.[3] Section 3(a) creates an "in lieu of" holiday for "[a]ny employee whose basic workweek does not include Sunday and who would ordinarily be excused from work on a holiday falling within his basic workweek." It states that when a holiday falls on a Sunday, the employee will "be excused from work on the next workday of his basic workweek." See Austin I, 124 Fed. Cl. at 420–21 (providing examples). Section 3(b) establishes "in lieu of" holidays for "[a]ny employee whose basic workweek includes Sunday and who would ordinarily be excused from work on a holiday falling within his basic workweek." See id. (providing examples).

The VA applies section 5 of the executive order to part-time nurses, so that they receive holiday pay for their second shift when they work two shifts that straddle the same calendar holiday. It does not, however, give part-time nurses the benefit of the "in lieu of" holidays provided by section 3 or 5 U.S.C. § 6103(b). The government contends that those provisions do not apply to part-time nurses because they do not work a "basic workweek." See Def.'s Resp. to Pls.' [Second] Mot. for Partial Summ. J. and Cross-Mot. for Summ. J. (Def.'s Resp.) at 4–5, ECF No. 65. That view was recently endorsed by the court in Yanko v. United States, No. 15-1560, 2016 WL 4256897, at *12 (Fed. Cl. Aug. 12, 2016), a case brought pursuant to 5 U.S.C. § 5546(b), which is the holiday pay provision that applies to Title 5 employees. Plaintiffs disagree, claiming that the government's argument is inconsistent with the Federal Circuit's decision in Fathauer v. United States, 566 F.3d 1352 (Fed. Cir. 2009), and that the term "employee" in the E.O. and in 5 U.S.C. § 6103(b) includes both part-time and full-time employees. Pls.' Reply to Def.'s Resp. at 6–8. They also argue, on a variety of grounds, that the term "basic workweek" applies to both full-time and part-time employees. See id. at 2–6.

The Court finds Plaintiffs' arguments unconvincing. First, principles of statutory construction support the government's argument that the phrase "basic workweek" as used in both the statute and the E.O. means a forty-hour workweek. Section 6103 is the second of the five "general provisions" contained in Subchapter 1 of Chapter 61 of Title 5 (entitled "Holidays"). The first section of that subchapter, § 6101, is entitled "Basic 40-hour workweek; work schedules; regulations." It instructs that the head of each agency shall "establish a <u>basic administrative workweek of 40 hours</u> for each full-time employee in his organization." 5 U.S.C. § 6101(a)(2) (emphasis added). Further, in 5 U.S.C. § 6101(a)(3), the phrases "basic workweek" and "basic 40-hour workweek" are used interchangeably. See 5 U.S.C. § 6101(a)(3)(B) ("the

---

[3] Section 4 of the executive order explicitly applies to "full-time employee[s]" whose "basic workweek[s]" are established by the head of his agency "because of the impracticability of prescribing a regular schedule of definite hours of duty for each workday." Both parties recognize that the claims of part-time nurses are not subject to this provision.

10

basic 40-hour workweek is scheduled on 5 days, Monday through Friday when possible, and the 2 days outside the basic workweek are consecutive"); 5 U.S.C. § 6101(a)(3)(C) (instructing that "the working hours in each day in the basic workweek are the same"); and 5 U.S.C. § 6101(a)(3)(E) (directing that "the occurrence of holidays may not affect the designation of the basic workweek").

Indeed, since at least 1945, the statute has consistently employed the phrase "basic workweek" to mean "a basic administrative workweek of forty hours." In section 604(a) of the Federal Employees Pay Act of 1945, 79 Pub. L. 106, 59 Stat. 295, titled "Establishment of Basic Workweek; Pay Computation Methods," Congress instructed the head of each agency "to establish . . . for all full-time officers and employees in their respective organizations . . . a basic administrative workweek of forty hours." Id. at 303 (emphasis added).

Further, construction of the phrase "basic workweek" to mean a forty-hour workweek is the interpretation that is used by the Office of Personnel Management (OPM)—the agency "charged with prescribing regulations for administration of the statutory scheme for establishment of a workweek and accrual of leave." See Armitage v. United States, 23 Cl. Ct. 483, 489 (1991) (citing 5 U.S.C. §§ 6101(c), 6311), aff'd, 991 F.2d 746 (Fed. Cir. 1993). "OPM has consistently construed the 'basic administrative workweek' to consist of 40 hours." Id.; see also 5 C.F.R. § 610.111(a). Further, OPM has consistently taken the position that part-time employees are not entitled to the benefit of "in lieu of" holidays. See 5 C.F.R. § 610.405; see also Pay & Leave, OPM.Gov, https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/holidays-work-schedules-and-pay (last visited September 14, 2016).

It has also been the Comptroller General's (CG) position since at least 1953 that part-time employees are not entitled to "in lieu of" holidays. That year, the CG ruled that a predecessor to E.O. 11,582 applied "only to employees who have a regularly established basic workweek of at least 40 hours and [did] not apply to part-time employees." Holidays – Compensation – Part-Time Employees, 32 Comp. Gen. 378, 378 (1953). In reaching this conclusion, the CG reviewed section 604(a) of the Federal Employees Pay Act of 1945, and explained that:

> [I]t appears reasonable to conclude that the term 'basic workweek,' as used in the executive order hereinabove quoted properly should be accorded the commonly understood meaning of said term as employed in the forgoing pay act and applicable civil service regulations. Specifically, therefore, that term as used in the executive order will be construed as relating only to employees who have a regularly established workweek of at least 40 hours.

Id. at 380; see also In re Lombardo, 63 Comp. Gen. 306, 306 (1984) (concluding that "[p]art-time employees are not covered by 5 U.S.C. § 6103(b) and Executive Order 11582[,] which authorize designated and in lieu of holidays for full-time employees when an actual holiday falls on an employee's nonworkday").

Further, the Court agrees with the CG that affording part-time employees the benefit of "in lieu of" holidays would create the paradoxical situation in which "the smaller the number of regularly scheduled workdays, the greater the [part-time employee's] entitlement to designated

11

or in lieu of holidays." 63 Comp. Gen. at 307. That Plaintiffs' interpretation would lead to this anomalous result provides further support for the CG's decades-long interpretation of the E.O. and 5 U.S.C. § 6103.

To be sure, Plaintiffs are correct that part-time employees fall within the definition of the word "employee" as that word is used in 5 U.S.C. § 6103 and in E.O. 11,582. Pls.' Reply to Def.'s Resp. at 6–7 (citing Fathauer, 566 F.3d at 521). But that observation begs the question before the Court because, unlike section 5 of E.O. 11,582 (which the VA does, in fact, apply to determine the holiday pay entitlement of part-time nurses), it is not enough to be "an employee" to qualify for an "in lieu of" holiday; an employee must also work a "basic workweek."

Plaintiffs counter that part-time employees in fact do have "basic workweeks" because they perform their part-time work on a regular schedule that is set in advance. Pls.' Reply. to Def.'s Resp. at 11. But this argument conflates the concept of a "basic workweek" with that of a regular, pre-scheduled workweek. As described above, the phrase "basic workweek" or "basic administrative workweek" is consistently used to refer to the forty-hour workweek that is the basis for full-time employment status. Even if an individual part-time nurse works a set schedule and set number of hours, there is no "basic workweek" applicable to part-time employment because, by definition, the workweek of a part-time employee can vary in length between sixteen and thirty-two hours. See 5 U.S.C. § 3401(2) (stating that "'part-time career employment' means part-time employment of 16 to 32 hours a week (or 32 to 64 hours during a biweekly pay period in the case of a flexible or compressed work schedule under subchapter II of chapter 61 of this title) under a schedule consisting of an equal or varied number of hours per day."). Plaintiffs have failed to provide any citation to a statute, regulation, or even non-binding guidance in which the phrase "basic workweek" is used in reference to part-time employment.[4]

There is similarly no merit to Plaintiffs' contention that the phrase "basic workweek" as set forth in 5 C.F.R. § 550.103 "specifically contemplates that the phrase applies not just to full-time employees" because it states that "[b]asic workweek, for full-time employees, means the 40-hour workweek established in accordance with § 610.111 of this chapter." Pls.' Mem. at 9–10. According to Plaintiffs, "the placement of commas before and after 'for full time employees' reflects the recognition that part-time employees also have basic workweeks." Id. at 10. As noted above, however, in OPM's view, part-time employees are not entitled to "in lieu of" holidays. Further, the Court has not been made aware of any instance in OPM's regulations or elsewhere in which the phrase "basic workweek" is used in connection with the schedules of part-time employees. The Court, accordingly, declines to rely upon the placement of the commas in

---

[4] Along with their current motion for partial summary judgment, Plaintiffs submitted the Declaration of Daniel Kowalski, who served for thirty-four years as a Human Resources specialist and HR manager at VA. According to Plaintiffs, Mr. Kowalski's declaration supports their interpretation of the meaning of the statutory phrase "basic workweek." The Court agrees with the government that to the extent that Plaintiffs offer Mr. Kowalski as an expert witness, his testimony is inadmissible because Plaintiffs failed to identify him as an expert witness as required by RCFC 26. Moreover, and in any event, the definition of "basic workweek" for purposes of the E.O. and statute involves a question of law as to which Mr. Kowalski's views as a VA official are not entitled to any particular deference.

12

section 610.111 to derive a meaning of the regulations that is at odds with OPM's own interpretation.

Finally, Plaintiffs assert that the phrase "basic workweek" must encompass part-time employees because "the definition of 'compressed schedule' referenced in 5 U.S.C. § 6103(d)(1)(A) specifically contemplates the designation of in lieu holidays for part-time workers working such schedules." Pls.' Mem. at 9. This assertion, however, is inconsistent with OPM's interpretation of the statute, as 5 C.F.R. § 610.406 specifically states that part-time employees on a compressed schedule are not entitled to "in lieu of" holidays.

OPM's interpretation, moreover, is a reasonable reading of the rather convoluted statutory language. Thus, section 6103(d)(2) grants agencies the discretion to adjust the "in lieu of" holidays set forth in subsection (b) for employees on a compressed schedule "if the agency head determines that it is necessary to do so in order to prevent an adverse agency impact." Section 6103(d)(1) defines "compressed schedule" in accordance with section 6121(5), which includes a definition for both full-time and part-time employees on compressed schedules. See 5 U.S.C. § 6121(5)(A) and (B). But it is clear that section 6103(d) only addresses full-time employees on compressed schedules because section 6103(d)(2) grants agencies discretion to establish certain employees' "in lieu of" holidays "other than as provided by subsection (b)." (emphasis added). As explained above, the "in lieu of" holidays conferred in subsection (b) apply to employees for whom the agency head has established a "basic workweek," which means a forty-hour workweek.

### D.  **Failure to Provide Additional Pay for Work Performed on the Calendar Holiday Itself Where Part-Time Nurses Work Single Tours**

For the reasons set forth above, the Court concludes that part-time nurses are not entitled to observe "in lieu of" holidays. However, that result does not compel the denial in their entirety of Plaintiffs' claims on behalf of part-time nurses who work single tours of duty that begin the day before the calendar holiday. To the contrary, VA's policy of not providing such nurses with any additional pay for work performed on the portion of those single tours that falls on the calendar holiday violates section 7453.

Thus, in its supplemental brief, the government acknowledges that the VA's policy with respect to part-time nurses who work single tours of duty is problematic precisely because, unlike full-time nurses, part-time nurses do not observe "in lieu of" holidays. Def.'s Suppl. Br. at 2. The only holiday available to part-time nurses is the calendar holiday. As a result, the government "concedes that there is not a basis to deny part-time nurses holiday pay for the hours of a tour of duty falling on a calendar holiday, when the nurse's tour of duty began the day before the holiday and the nurse does not have a second tour beginning on the holiday." Def.'s Suppl. Br. at 2 n.1. Accordingly, while part-time nurses are not entitled to "in lieu of" holidays, those who have worked single tours of duty are entitled to summary judgment in their favor to the extent that the government did not compensate them with additional pay for the hours they worked on the calendar holiday during those tours of duty.

### E. Part Time Nurses Who Work Two Tours Which Both Begin on a Calendar Holiday

Finally, Plaintiffs have asked that the Court "clarify that the portion of its prior ruling granting Plaintiffs' Motion for nurses who perform two tours of duty which both begin on a holiday applies to part-time nurses, and also applies to intermittent nurses who worked on calendar holidays." But the government has asserted (and Plaintiffs do not deny) that under current VA policy, part-time nurses are, in fact, provided additional pay for both shifts when they work two tours of duty that both begin on a holiday. Def.'s Suppl. Br. at 2; id. Attach. at 2–3. Therefore, the government, and not Plaintiffs, is entitled to summary judgment as to this claim.

### CONCLUSION

On the basis of the foregoing:

1. Plaintiffs' Motion for Reconsideration is **DENIED**.

2. Plaintiffs' Motion for Partial Summary Judgment as to the claims of part-time nurses is **GRANTED** as to part-time nurses who worked a single tour of duty (as described above) but did not receive additional pay for work performed on the calendar holiday. Plaintiffs' motion is otherwise **DENIED**.

3. The government's Cross-Motion for Partial Summary Judgment is **DENIED** as to part-time nurses who worked a single tour of duty but did not receive additional pay for work performed on the calendar holiday. Otherwise, the government's cross-motion is **GRANTED**.

The parties shall file a joint status report within 30 days, proposing further proceedings in this case.

**IT IS SO ORDERED.**

                s/ Elaine D. Kaplan
                ELAINE D. KAPLAN
                Judge